**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                                 )

**MCGRATH & COMPANY, LLC,**        )
                                                 )

       **Plaintiff,**                    )
                                               )

       **v.**                            )        **Civil Action No. 11-10930-DJC**
                                               )

**PCM CONSULTING, INC.,**        )
                                               )

       **Defendant.**                  )
_____)

**<u>MEMORANDUM AND ORDER</u>**

**CASPER, J.**                                            February 15, 2012

## I.    Introduction

Plaintiff McGrath & Company, LLC ("McGrath") brings this action against Defendant PCM Consulting, Inc. ("PCM") for unfair competition and false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a), and state law. PCM has now moved to dismiss the complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6). McGrath has moved to strike exhibits attached to PCM's motion. For the reasons set forth below, PCM's motion to dismiss is DENIED and McGrath's motion to strike is DENIED.

## II.    Burden of Proof and Standard of Review

To survive a motion to dismiss, a complaint "must 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,' and allege 'a plausible entitlement to relief.'" <u>Decotiis v. Whittemore</u>, 635 F.3d 22, 29 (1st Cir. 2011) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 559 (2007)). As the First Circuit has made clear, to determine whether the factual allegations in the complaint are sufficient to survive a motion to dismiss, the Court "employ[s] a

1

two-pronged approach." <u>Soto-Torres v. Fraticelli</u>, 654 F.3d 153, 158 (2011).  "The first prong is to identify the factual allegation and to identify statements in the complaint that merely offer legal conclusions couched as facts or are threadbare or conclusory."  <u>Id.</u>  The second prong is to assess whether the factual allegations "'allow [ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  <u>Soto-Torres</u>, 654 F.3d at 159 (quoting <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)).  If they do, "the claim has facial plausibility."  <u>Ocasio-Hernández v. Fortuño-Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011).  "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief."  <u>Soto-Torres</u>, 654 F.3d at 159  (quoting <u>Sepúlveda-Villarini v. Dep't. of Educ. of P.R.</u>, 628 F.3d 25, 29 (1st Cir. 2010)).

## III.    Factual Background

McGrath and PCM are professional service companies that primarily offer project management services for companies engaged in major construction projections.  (Compl. ¶ 4).  For a number of years prior to the creation of McGrath and PCM, the president of McGrath, Liam McGrath, and the president of PCM, David Lane, were partners at a company called McLane Associates, Inc. ("McLane").  (Compl.  ¶ 5).  McLane provided professional services substantially similar to those provided by McGrath and PCM.  (Compl.  ¶ 5).

In 2007, Messrs. McGrath and Lane terminated their partnership and the operation of McLane.  (Compl. ¶ 6).  Pursuant to the agreement reached by McGrath and Lane, McLane agreed it would not take on any new projects under its name and would only complete projects already underway.  (Compl. ¶ 6).  McLane concluded providing services in early 2008 and has not bid on contracts or provided any services since that time.  (Compl. ¶ 6).  After McLane ceased operations,

McGrath and Lane were permitted to pursue and bid on new projects on behalf of themselves or any company they chose to operate.  (Compl. ¶ 7).  McGrath formed McGrath & Company, LLC which pursues and bids on various project management jobs.  (Compl. ¶ 8).  Lane resumed providing services directly through PCM, an entity that he had originally formed in or around 1999.  (Compl. ¶ 9).

PCM sought to bid for new work on projects to provide services to Intel corporation ("Intel"), a company to which McLane had previously provided services.  (Compl. ¶¶ 13-14).  To bid for Intel projects, PCM was required to submit to a prequalification procedure.  (Compl. ¶ 14).  The prequalification process is designed to ensure that companies have sufficient resources to perform Intel's large jobs on which companies may bid.  (Compl. ¶ 14).  Companies seeking prequalification are required to submit to Intel, among other things, information concerning their headcount and financial assets.  (Compl. ¶ 15).  McGrath alleges that PCM submitted false information concerning both its staffing resources and financial condition to Intel.  (Compl. ¶ 15).  Specifically, McGrath alleges that PCM combined its own staffing numbers with McLane's former staffing numbers and claimed the combined number as its own.  (Compl. ¶ 16).  PCM employed fewer than ten people worldwide, but it reported a headcount of approximately seventy employees after combining its numbers with those of McLane.  (Compl. ¶ 16).  Similarly, although PCM had only minimal cash on hand, it reported to Intel that it had in excess of $1.4 million dollars in cash.  (Compl. ¶ 17).  In doing so, McGrath alleges that PCM provided Intel with McLane's bank account information.  (Compl. ¶ 17).   Intel jobs, which represent between 75 and 80 percent of all PCM's income, are located in the United States, Israel and Ireland.  (Compl. ¶ 25).  McGrath alleges that each of the Intel jobs awarded to PCM were premised upon the false information submitted to Intel

by PCM.  (Compl. ¶ 25).

PCM has also provided services to Wyeth Biopharma ("Wyeth") (a previous client of McLane), Advanced Micro Devices and the State of New York.  (Compl. ¶ 26).  McGrath alleges that PCM made similar false statements concerning its staff and financial resources to these entities in its pursuit of projects for them.  (Compl. ¶ 27).  McGrath further alleges that PCM has sought to provide services to Amgen, Inc., Comcast Corporation and other companies and made false statements to these companies regarding its staff and resources in doing so.  (Compl. ¶¶ 28-29). McGrath claims that PCM's statements regarding its size, workforce and financial resources were all literally false and designed to mislead the purchasers of its services.  (Compl. ¶ 31).

PCM also maintains a website which advertises its services.  (Compl. ¶ 32, Ex. 1).  McGrath alleges that the website contains additional false statements intended to give the incorrect impression that PCM is a large company.  (Compl. ¶ 33).  Specifically, PCM states on its website that its "workforce is currently consulting on over three billion dollars of active capital construction work." (Compl. ¶ 34).  McGrath alleges such statement is literally false because the statement refers to past work performed by McLane, not PCM, and because PCM does not currently consult on active capital construction work approaching three billion dollars.  (Compl. ¶¶ 34-35).

Similarly, the complaint alleges that the statement on PCM's website that it "currently manages projects in five countries and 17 states across the United States" is also literally false. (Compl. ¶ 36).  McGrath alleges that the statements on PCM's website attempt to blur the lines between PCM's experience and that of McLane's in a manner designed to mislead consumers of its services, pointing to several statements that PCM "experienced an average annual growth of 45%" and that "in 2004, the Project Management group of William A. Berry & Son, Inc. was merged into

4

the firm, which further expanded its project management business into the Health Care and Education Institutional marketplaces" and claiming that these representations are untrue or, at least, misleading since they concern McLane, not PCM.  (Compl. ¶¶ 39, 41).  McGrath claims that the website's references to "new divisions supporting Financial and Insurance Institution's real estate transaction work and government funded projects" refers to McLane, not PCM.  (Compl. ¶ 40).

**IV.     Procedural History**

On May 24, 2011, McGrath filed a complaint alleging unfair competition and false advertising in violation of the Lanham Act, Mass. Gen. L. c. 266, § 91, Mass. Gen. L. c. 93A and common law.  (D. 1).  PCM has now moved to dismiss the complaint.  (D. 7).  McGrath opposes the motion and has also moved to strike the exhibits to PCM's motion to dismiss.  (D. 9, 10).   The Court has heard oral argument on both motions.

**V.     Discussion**

**A.     Count I:   Violation of the Lanham Act for False Advertising**

The Lanham Act "prohibits false and misleading descriptions of products and services in interstate commerce" and "was designed to protect consumers and competitors from any duplicitous advertising or packaging which results in unfair competition."  Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d 302, 310 (1st Cir. 2002).  To state a claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1), plaintiff must allege that:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely

> to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

Id. at 310-11.

A plaintiff must show that the "defendant's advertisement is literally false or implicitly false—that is, the advertisement is true or ambiguous yet misleading." Id. at 311. Where the advertisement is literally false, a plaintiff may establish a Lanham Act violation without evidence of consumer deception. Id. "Where the advertisement is implicitly false, however, 'an additional burden is placed upon the plaintiff to show that the advertisement . . . conveys a misleading message to the viewing public.'" Id. (quoting Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 33 (1st Cir. 2000)). As discussed further below, the complaint identifies both the literally false and implicitly false statements allegedly made by PCM.

### 1.    Commercial Advertising or Promotion

Section 1125(a) prohibits misrepresentations only in "'commercial advertising or promotion.'" Podiatrist Ass'n, Inc. v. La Cruz Azul De P.R., Inc., 332 F.3d 6, 19 (1st Cir. 2003) (quoting 15 U.S.C. § 1125(a)(1)(B)). To constitute commercial advertising or promotion, "a representation must (a) constitute commercial speech (b) made with the intent of influencing potential customers to purchase the speaker's goods or services (c) by a speaker who is a competitor of the plaintiff in some line of trade or commerce and (d) disseminated to the consuming public in such a way as to constitute 'advertising' or 'promotion.'" Podiatrist, 332 F.3d at 19. The "core notion" of commercial speech is "speech which does 'no more than propose a commercial transaction.'" Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60, 66 (1983) (quoting Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc., 425 U.S. 748, 762 (further citation omitted)).

6

Advertising or promotion is commercial speech that "at a bare minimum target[s] a class or category of purchasers or potential purchases, not merely particular individuals." Podiatrist, 332 F.3d at 19. To survive a motion to dismiss, "a plaintiff at the very least must identify some medium or means through which the defendant disseminated information to a particular class of consumers." Id. at 20.

Here, McGrath's factual allegations concerning the literally false or misleading statements on PCM's website regarding the makeup of the company and its services as well as those PCM made to Intel and other companies to obtain their business are sufficient to show commercial advertising or promotion for the purposes of the Lanham Act claim. The complaint alleges that the website is a means to promote and advertise PCM's services to any consumer who views it. (Compl. ¶ 32, Ex. 1 (copies of website pages)). Specifically, McGrath claims that PCM's website, "serves as advertising for its services" and can be "viewed anywhere in the world." Compl. ¶ 32. As to the allegedly false or misleading statements made to Intel and other companies, the complaint alleges that PCM submitted false information regarding its staffing resources and financial condition to Intel to obtain Intel's business (Compl. ¶¶ 14-19, 25) and that PCM has made false statements concerning its staff and financial resources to other companies to procure projects. (Compl. ¶¶ 26-31). Specifically, McGrath claims that PCM combined its own staffing numbers with McLane's former staffing numbers and reported it had seventy employees, when PCM had fewer than ten employees. (Compl. ¶16). The complaint also alleges that although PCM had minimal cash on hand, it reported to Intel it had in excess of $1.4 million dollars in cash, providing Intel with bank account information of McLane. (Compl. ¶ 17). It is reasonable to infer that such statements disseminated on PCM's website and to Intel and other businesses constitute commercial speech in that the

statements were a means to promote PCM and its services to secure jobs managing projects for prospective clients.

The complaint also adequately alleges that PCM made its false or misleading statements with the intent of influencing potential customers to purchase its services through the website and in its communications with Intel and other companies.  To support this allegation, McGrath claims that the website contains statements that are either false or are designed to mislead and confuse the "average consumer of PCM's services" and that the false statements give the impression that "PCM is a larger company than it actually is."  Compl. ¶¶ 33, 39-41.  Specifically, the complaint alleges PCM's statement on its website that its "workforce is currently consulting on over three billion dollars of active capital construction work" is literally false because it refers to past work performed by McLane, not PCM, and that PCM "does not currently consult on anything close to three billion dollars of active construction work."  Compl. ¶¶ 34-35.  McGrath claims that the statement on PCM's website that it "currently manages projects in five countries and 17 states across the United States" is also literally false.  (Compl. ¶ 36).  McGrath further alleges that the statements on PCM's website attempt to blur the lines between PCM's experience and that of McLane's, pointing to several statements regarding PCM's annual growth and business expansion that actually referred to McLane.  (Compl. ¶¶ 37-41).

The complaint alleges that PCM made these false statements concerning its staffing and financial condition to other companies, including Intel, in seeking to provide them with project management services.  That these alleged false statements were made in direct communication with each company, and not in a traditional advertising campaign, does not exclude these communications from amounting to "commercial advertising or promotion" under the Lanham Act.

Radio Today, Inc. v. Westwood One, Inc., 684 F. Supp. 68, 74 (S.D.N.Y. 1988) (noting that "[t]he Lanham Act does not apply merely to false advertising through traditional media channels, but to a broad range of deceptive statements made in connection with the sale of goods or services"). PCM's communications with Intel and the other companies were a means of promoting PCM's business to secure project management jobs with those companies.   Courts have held that false representations contained in private letters sent from one company to another, Brandt Consol., Inc. v. Agrimar Corp., 801 F. Supp. 164, 167, 174 (C.D. Ill. 1992), or in a defendant's direct communications to plaintiff's prospective tenants and lenders, North Shore Med. Ctr., Ltd. v. Evanston Hosp. Corp., 1993 WL 141717, at *3 (N.D. Ill. Apr. 30, 1993), are within the reach of the statute.   The same is true with the communications of PCM's own services to prospective clients here.

Finally, as to the third element - that the representation must be made by a speaker who is a competitor of the plaintiff in some line of trade or commerce - the complaint alleges that McGrath and PCM offer nearly identical project management services for companies engaged in major construction projects.   (Compl.   ¶ 4).   It is reasonable to infer from these factual allegations that PCM and McGrath are competitors in the same line of business.   Thus, McGrath has shown that PCM's alleged false or misleading statements were made in commercial advertising or promotion to satisfy the first requirement to state a plausible false advertising claim under the Lanham Act.

## 2.    Materiality

In addition to establishing that the misrepresentation was made in commercial advertising or promotion, a plaintiff must also demonstrate that "the misrepresentation is material, in that it is likely to influence the purchasing decision." Cashmere, 284 F.3d at 311.   "[M]ateriality focuses on

whether the false or misleading statement is likely to make a difference to purchasers." Id. at 312 n. 10. A plaintiff may establish materiality by showing that "the false or misleading statement relates to an inherent quality or characteristic of the product." Id. at 311-12 (internal quotation marks and citation omitted). "[W]hen a statement is literally false or has been made with the intent to deceive, materiality must be demonstrated in order to show that the misrepresentation had some influence on consumers." Id. at 312 n. 10.

As discussed above, the complaint identifies the false or misleading statements PCM made on its website and to other companies regarding its business. It is plausible that prospective clients viewing PCM's website as well as Intel and other companies whom have received allegedly false or misleading information from PCM concerning its services and the company as a whole would likely be influenced by PCM's representations that it has more financial and staffing resources than it actually has to manage projects. (Compl. ¶¶ 13-41).

### 3.   Consumer Deception

For similar reasons, McGrath had sufficiently pleaded the next element of a false advertising claim under the Lanham Act which requires the plaintiff to establish that the alleged misrepresentation actually deceives or has the tendency to deceive a substantial portion of the consuming public. Cashmere, 284 F.3d at 311; Clorox, 228 F.3d at 33 n. 6. As discussed above, the pleading identifies PCM's false or misleading statements regarding its size, growth and business expansion related to its project management capabilities and services. It is plausible to infer that these statements have at least the tendency to deceive potential customers into believing that PCM has certain resources and experience in project management, when it does not, in evaluating whether they should hire PCM as their project manager for construction projects. See Compl. ¶¶ 33-41, 46.

### 4.      Interstate Commerce

A plaintiff must also adequately allege that the defendant placed the false or misleading statements in interstate commerce to establish a plausible false advertising claim under § 43(a) of the Lanham Act.   Cashmere, 284 F.3d at 311.    Here, it is reasonable to infer from the factual allegations in the complaint that PCM placed its statements in interstate commerce.   The complaint alleges that PCM made false statements in providing services for a variety of Intel entities across the United States and abroad and to other companies in New York and Rhode Island.   (Compl. ¶¶ 12, 25-30).   McGrath also identifies the false statements concerning its workforce, annual growth, consulting capacity made through its website.   (Compl. ¶¶ 32-41).   Courts have generally held that when one operates a website containing alleged false or misleading statements, the party causes those statements to enter interstate commerce through the internet.   See, e.g., Stanislaus Custodial Deputy Sheriffs' Ass'n v. Deputy Sheriff's Ass'n, 2010 WL 2218813, at *5 (E.D. Cal. June 1, 2010) (rejecting defendants' argument that the mere use of the internet does not invoke Lanham Act jurisdiction and noting that "a website, transmitted worldwide over the Internet, falls within the scope of commerce lawfully regulated by Congress because the Internet has been deemed as 'instrumentality and channel of interstate commerce'") (citation omitted); Healthport Corp. v. Tanita Corp. of Am., 563 F. Supp. 2d 1169, 1180 (D. Or. 2008) (finding that by posting advertisements on their websites, the party caused the false statements to enter interstate commerce);  MSP Corp. v. Westech Instruments, Inc., 500 F. Supp. 2d 1198, 1217 (D. Minn. 2007) (finding plaintiff was likely to succeed on its false advertising claim in granting preliminary injunction in part because defendant caused the alleged false statements to enter interstate commerce by posting the statements on the internet).   Thus, for the purposes of this motion to dismiss, the complaint sufficiently alleges facts

that PCM placed its statements in interstate commerce.

### 5.      Harm and Relief Sought

Finally, the plaintiff must show that it "has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." Cashmere, 284 F.3d at 311.  The complaint alleges that McGrath's harm "includes but is not limited to, the loss of McGrath's right to fairly compete in the marketplace and the loss of jobs which it would have obtained but for PCM's false statements and misrepresentations." (Compl. ¶ 49).  Despite PCM's contention otherwise, such allegations at this juncture are sufficient to support the reasonable inference that McGrath was harmed or is likely to be harmed by PCM's alleged conduct where McGrath and PCM are direct competitors seeking the same clients in the same line of business.

Accordingly, the Court finds the complaint has adequately pleaded all of the elements to make out a plausible false advertising claim under § 43(a) of the Lanham Act.  Accordingly, PCM's motion to dismiss as to Count I is DENIED.[1]

### B.      Count II:  Violation of Mass. Gen. L. c. 266, § 91

Although Mass. Gen. L. c. 266, § 91 does not allow for a private right of action for damages,

---

[1]To the extent that PCM argues that the heightened pleading requirements of Rule 9(b) apply to false advertising claims brought under the Lanham Act, PCM cites no First Circuit authority nor is the Court aware of any authority in this Circuit finding that the heightened pleading standard applies to a Lanham Act claim for false advertising.  See, e.g., John P. Villano, Inc. v. CBS, Inc., 176 F.R.D. 130, 131 (S.D.N.Y. 1997) (finding that "a claim of false advertising under [the Lanham Act] falls outside the ambit of Rule 9(b) and may not be the subject of any heightened pleading requirement" and noting that a false advertising claim under the Lanham Act is "not identical to a claim of fraud"); see also MMM Healthcare, Inc. v. MCS Health Mgmt. Options, 2011 WL 4863898, at *5 (D.P.R. October 6, 2011) (citing the reasoning of John P. Villano, Inc. with approval).

Thornton v. Harvard Univ., 2 F. Supp. 2d 89, 95 (D. Mass. 1998), a person who has been injured by untrue or misleading advertisements may petition to enjoin the person violating the statute from continuing to engage in untrue or misleading advertising.  See Mass. Gen. L. c. 266, § 91. To state a claim under Mass. Gen. L. c. 266, § 91, the plaintiff must show that she was injured by the advertisement containing "any assertion, representation or statement of fact which is untrue, deceptive or misleading" made by a person who "knew, or might on reasonable investigation have ascertained to be untrue, deceptive or misleading[.]"  Mass. Gen. L. c. 266, § 91.  Here, as discussed above, the complaint sufficiently alleges that McGrath was injured by PCM's untrue or misleading statements of its size, growth, resources and project management services and experience.  The complaint identifies the statements that McGrath claims are actually untrue and which PCM knew or should have known were untrue, as opposed to misleading.  Moreover, McGrath seeks injunctive relief under this claim.  (Compl., prayer for relief, ¶¶ 2-5).  Accordingly, McGrath has stated a plausible claim under Mass. Gen. L. c. 266, § 91 and the motion to dismiss Count II is DENIED.

### C.    Count III:   Violation of Mass. Gen. L. c. 93A

Chapter 93A prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a).  Generally, under Chapter 93A, business practices are "unfair" if they are "immoral, unethical, oppressive, or unscrupulous" or fall "within the penumbra of some statutory, common-law or other established concept of unfairness." Morrison v. Toys "R" Us, Inc., 441 Mass. 451, 457 (2004) (quoting Heller Fin. v. Ins. Co. of N. Am., 410 Mass. 400, 408 (1991)); Ellis v. Safety Ins. Co., 41 Mass. App. Ct. 630, 640 (1996).  "'[W]hether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact . . . the boundaries of what may qualify for consideration as a c. 93A violation

is a question of law.'"  Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 563 (2008) (quoting Schwanbeck v. Fed.-Mogul Corp., 31 Mass. App. Ct. 390, 414 (1991)).  A plaintiff bringing an action under Mass. Gen. L. c. 93A, § 11, as McGrath does here, must show a "loss of money or property, real or personal" as a result.  Id. § 11;  Rule v. Fort Dodge Animal Health, Inc., 607 F.3d 250, 255 (1st Cir. 2010) (concluding that "injury under Chapter 93A means economic injury in the traditional sense); Boyle v. Int'l Truck & Engine Corp., 369 F.3d 9, 15 (1st Cir. 2004) (plaintiff must allege defendant's actions resulted in a "substantial injury to competitors or other business [persons]") (internal quotation marks and citation omitted).

Misleading or false advertising is actionable under Chapter 93A by a competitor damaged by such advertising. See, e.g., Abruzzi Foods, Inc. v. Pasta & Cheese, Inc., 986 F.2d 605, 605-606 (1st Cir. 1993) (noting that a 93A action will lie for deceptive advertising but finding advertising was not unfair or deceptive).  The "[r]egulations promulgated by the Massachusetts Attorney General to enforce ch. 93A provide explicitly that '[i]t is an unfair or deceptive act for a seller to make any material representations of fact in an advertisement if the seller knows or should know that the material representation is false or misleading or has the tendency or capacity to be misleading.'" Skinder-Strauss Assocs. v. Mass. Continuing Legal Educ., Inc., 914 F. Supp. 665, 681-82 (D. Mass. 1995) (quoting 940 C.M.R. § 6.04(1) (1995)).

As discussed above, the complaint here identifies PCM's allegedly false or misleading statements on its website concerning its size, growth, resources and project management services and experience on its website to attract and secure projects and sufficiently alleges McGrath is entitled to a form of relief as a result.  Such allegations are sufficient to comprise a plausible Chapter 93A claim.

PCM argues that the complaint contains no allegations that PCM's alleged conduct occurred "substantially and primarily" in Massachusetts, (Def. Opp. at 14), required to sustain a claim under ch. 93A, § 11, HipSaver Co., Inc. v. J.T. Posey Co., 490 F. Supp. 2d 55, 71 (D. Mass. 2007). The defendant, here PCM, bears the burden of showing that the relevant conduct took place outside of Massachusetts. Garshman Co. v. Gen. Elec., Co., 176 F.3d 1, 6 (1st Cir. 1999). "Courts applying this requirement 'determine whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth.'" Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Ltd., 2006 WL 1766434, at *12 (D. Mass. June 28, 2006) (quoting Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 472 (2003)). To determine a claim's center of gravity, the Court looks to: "(1) where the defendant commits the unfair and deceptive act or practice; (2) where the plaintiff receives or acts on the wrongful conduct; and (3) where the plaintiff sustained losses caused by the wrongful conduct." Kuwaiti, 438 Mass. at 472 n. 13 (noting the determination of whether actions underlying a Chapter 93A claim occurred primarily and substantially in Massachusetts is "fact intensive and unique to each case"); see Garshman, 176 F.3d at 6-7.

Here, PCM's headquarters are located in Andover, Massachusetts. The complaint alleges that PCM published and disseminated its false or misleading statements to Intel and other companies as well as to consumers via its website and that McGrath has been harmed as a result. It is reasonable to infer from the factual allegations in the complaint that since PCM is located in Massachusetts, PCM published and disseminated its alleged false or misleading statements from and in Massachusetts through its communications with Intel and other companies during the pre-qualification and bidding procedures as well as through its website available to prospective clients.

Thus, based on the facts alleged in this case, the "center of gravity" of McGrath's claim occurred "substantially and primarily" in Massachusetts. Accordingly, McGrath's Chapter 93A claim survives the instant motion to dismiss.

### D.    Count IV:  Unfair Competition

McGrath also brings a claim for common law unfair competition based on PCM's allegedly false statements and misrepresentations in connection with its advertising and promotions. This unfair competition claim mirrors the allegations that underpin the Lanham Act and Chapter 93A claims. Accordingly, PCM's motion to dismiss Count IV is DENIED.

### E.    Statute of Limitations

PCM argues that Counts I through III are barred as a result of McGrath's failure to bring this action within the applicable statute of limitations period. To support its argument that the statute of limitations period has expired, PCM relies on an e-mail dated November 14, 2007, attached to its motion to dismiss, purportedly showing that McGrath was aware, at least as of that date, of PCM's alleged false or misleading statements on its website and, therefore, argues that the statute of limitations period was triggered at that time.

It is well-settled in this Circuit that "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). The narrow exception to this general rule is reserved "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Alternative Energy, 267 F.3d at 33 (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). It is only when a complaint

relies upon such document, whose authenticity is not challenged, that the document will merge into the pleadings and can be properly considered on a motion to dismiss.  Id.  Where a defendant introduces a document on a motion to dismiss that was not incorporated or relied upon in the complaint, the problem is the lack of notice to the plaintiff.  "Where plaintiff has actual notice . . . and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."  Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991), cert. denied, 503 U.S. 960 (1992).  Contrary to PCM's contention otherwise, McGrath's failure to dispute the authenticity of the document does not render it appropriate for the Court to consider any document a defendant attaches to its motion to dismiss not relied on or incorporated into the complaint.  Although if a plaintiff chooses to admit the authenticity of the document, a court may consider it on a motion to dismiss,  Berk v. Ascott Inv. Corp., 759 F. Supp. 245, 249 (E.D. Pa. 1991), such is not the case here.  Accordingly, the Court has not relied upon the e-mail, but chooses not to strike it from the docket.[2]

Even assuming the Court were to consider the November 14, 2007 e-mail, the e-mail does not answer whether McGrath's claims are time-barred.  In addition to alleging that PCM's statements on the website were false and misleading, McGrath also alleges a series of alleged false and misleading statements made to Intel and other companies in PCM's pursuit of various projects for them after the

---

[2]The Court, however, may properly consider copies of PCM's website pages attached to the complaint.  The complaint alleges PCM made false or misleading statements on its website.  In making such allegations, McGrath has incorporated by reference and relied on pages from the website in its complaint.  See, e.g., Clorox, 228 F.3d at 32 (considering advertising material outside of the complaint in a motion to dismiss false advertising claim because material was "integral" to assessing the complaint's allegations).  The Court may also consider copies of court orders attached to PCM's motion to dismiss as they are a matter of public record.  Watterson, 987 F.2d at 3.  Accordingly, McGrath's motion to strike is DENIED.

dissolution of McLane.  (Compl. ¶¶ 13-31; Def. Mot., Ex. 3; <u>see also</u> Pl. Opp. at 10 n. 3).  PCM does not contend that such statements occurred after the statute of limitations period expired.  Thus, it cannot be said that the e-mail alone bars McGrath's claims.

### F.      Whether McGrath's Claims Are Barred By Res Judicata

PCM argues that the doctrine of res judicata bars McGrath's claims in this case.  The Court will provide a brief background of the state court action and then address whether PCM may invoke res judicata based on the issues and claims raised here and in the state court action.

### 1.      Background of the State Court Action

In late 2008, Mr. Lane, individually and on behalf of McLane Associates, brought an action against Mr. McGrath and Bank of America, as trustee, to enjoin Mr. McGrath from retaining approximately $1.4 million dollars in funds obtained when he allegedly wrote himself a check for that amount from the McLane bank account as Mssrs. Lane and McGrath were terminating their business relationship.  (Def. Mot., Ex. 3 (Essex Superior Court 12/29/08 docket entry)).  The Court (Tuttman, J.) granted a preliminary injunction and ordered that the funds be frozen and not be disbursed by Bank of America.  (Def. Mot., Ex. 3 (Essex Superior Court 12/29/08 docket entry)).

Mr. McGrath's counterclaim asserted claims for intentional interference with business relations of Mr. McGrath's current and former business associates (Count III), defamation based on statements Mr. Lane allegedly made to third parties about Mr. McGrath (Count IV) and violation of Mass. Gen. L. c. 93A (Count V).  (Def. Mot., Ex. 4 (counterclaim)).  Mr. McGrath sought a declaratory judgment concerning the legal obligations of the parties in the winding-up of the affairs and distribution of assets concerning McLane (Count I) as well as injunctive relief for Mr. Lane to repay various funds to the McLane bank account (Count II).  (Def. Mot., Ex. 4 (counterclaim)).  Mr.

McGrath amended his counterclaim to add additional factual allegations to the defamation claim. (Def. Mot., Ex. 5 (amended counterclaim)).

After the parties had engaged in discovery, on July 2, 2009, Mr. Lane moved to quash Mr. McGrath's subpoena served upon Intel or, in the alternative, for a protective order, on the basis that Mr. McGrath sought irrelevant information as well as Mr. Lane's proprietary business information and trade secrets.  (Def. Mot., Ex. 10).  The Court agreed and quashed the subpoena to Intel except as to the type of correspondence or communication between Mssrs. McGrath and Lane.  (Def. Mot., Ex. 11).

During discovery, the Court also denied Mr. McGrath's August and July requests to amend the counterclaim to include allegations that Mr. Lane misappropriated assets of McLane Israel, Ltd., a subsidiary of McLane.  (Def. Mot., Ex. 8).  Specifically, Mr. McGrath sought to add claims against Lane for breach of fiduciary duty and diversion of business assets and income from McLane Isreal to an entity owned or controlled by Lane.  (Def. Mot., Ex. 6 (Pl. Mot. to Amend at 2-3, Ex. A ¶¶ 9-12)).  Upon Mr. Lane's motion, the Court dismissed the intentional interference with business relations and defamation counterclaims (Counts III, IV, respectively), and clarified that the Chapter 93A claim (Count V) had been dismissed and that only Counts I and II (request for declaratory judgment and injunctive relief) remained.  (Def. Mot., Ex. 7 (Essex Superior Court 7/29/09 docket entries)).

**2.    PCM Cannot Invoke Claim or Issue Preclusion**

The doctrine of res judicata provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980).  "Federal courts must give preclusive effect

to state court judgments in accordance with state law." SBT Holdings, LLC v. Town of Westminster, 547 F.3d 28, 36 (1st Cir.2008) (internal quotation marks and citation omitted).  As the parties here cite to Massachusetts law in their briefs with respect to each claim alleged in the complaint and do not dispute that Massachusetts law applies, this Court will apply Massachusetts law.

Under Massachusetts law, res judicata includes both claim preclusion and issue preclusion. Heacock v. Heacock, 402 Mass. 21, 23 n. 2 (1988).  "Claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action." Kobrin v. Board of Registration in Medicine, 444 Mass. 837, 843 (2005) (quoting O'Neill v. City Manager of Cambridge, 428 Mass. 257, 259 (1998) (further citation omitted)).   To invoke claim preclusion, there must be: "(1) the identity or privity of the parties to the present and prior actions; (2) identity of the cause[s] of action; and (3) prior final judgment on the merits." Kobrin, 444 Mass. at 843 (quoting DaLuz v. Dep't of Corr., 434 Mass. 40, 45 (2001)); McDonough v. City of Quincy, 452 F.3d 8, 16 (1st Cir. 2006).  When assessing the second element of claim preclusion, Massachusetts courts find causes of action to be "identical if they 'derive [ ] from the same transaction or series of connected transactions.'" McDonough, 452 F.3d at 16 (quoting TLT Const. Corp. v. A. Anthony Tappe & Assocs., 48 Mass. App. Ct. 1, 8 (1999)). Significantly, "a particular legal theory not pressed in the original suit will nonetheless be precluded in the subsequent one if it prescinds from the same set of operative facts." Kale v. Combined Ins. Co. of Am., 924 F.2d 1161, 1166 (1st Cir.1991), cert. denied, 502 U.S. 816 (1991).

Issue preclusion "'prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies.'" Kobrin, 444 Mass. at 843 (quoting Heacock, 402 Mass. at 23 n. 2).  Before precluding a

party from relitigating an issue, "a court must determine that (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication." Kobrin, 444 Mass. at 843 (quoting Tuper v. N. Adams Ambulance Serv., Inc., 428 Mass. 132, 134 (1998)).

Here, PCM has not satisfied the requirements for invoking either claim or issue preclusion. The parties in the state court action and the instant case are not identical. PCM was not a party to the state court action. Even assuming Mr. Lane is in privity with PCM and Mr. McGrath is in privity with McGrath, the claims and issues in the state court action are different. The claims by the individual parties in the state court action derived from the termination of their business relationship, including the allocation of monies and the procurement of clients, such as Intel, that Mssrs. Lane and McGrath may have competed for as McLane was dissolved. In contrast, here, McGrath's claims of injury here arise from PCM's allegedly false or misleading statements to clients and prospective clients regarding the makeup of the company, its experience in project management and the services it offers.

To support its claim of issue or claim preclusion, PCM specifically argues that McGrath is precluded from bringing its Chapter 93A claim in the instant case. In the state court action, McGrath asserted a Chapter 93A counterclaim against Mr. Lane, alleging that Mr. Lane had stolen Intel's Israel business from the partnership and that Lane had improperly taken Intel's Israel business for himself. The state court dismissed McGrath's Chapter 93A counterclaim because he "failed to allege any unfair/deceptive conduct except that between partners to which 93A does not apply . . . ." D. 14 (Superior Court order attached to supplemental letter by PCM). That is, because Messrs. Lane and

McGrath were business partners, Mr. McGrath could not bring a Chapter 93A claim against Lane, regardless of whether such unfair and deceptive conduct related to Intel or not. McGrath's Chapter 93A claim against PCM here has nothing to do with the dissolution of McLane and the parties' business relationship. Rather, the Chapter 93A claim McGrath asserts in this case is based on PCM's alleged false or misleading statements made on PCM's website and promotional materials to prospective clients, including Intel, from whom it seeks or has sought business. These claims arose after the Mssrs. Lane and McGrath's partnership had dissolved. Thus, the Chapter 93A claim in state court has no bearing on whether McGrath may bring a Chapter 93A claim against PCM here.

PCM further contends that McGrath has brought the instant action in an attempt to obtain discovery regarding Intel's relationship with Mr. Lane that Mr. McGrath was precluded from accessing in the state court action. The state court prohibited Mr. McGrath from seeking irrelevant information from Intel as well as Mr. Lane's proprietary business information and trade secrets, but allowed Mr. McGrath to obtain correspondence or communication between Messrs. McGrath and Lane as it related to Intel. (Def. Mot., Exs. 10, 11). Regardless of the motivations PCM contends are behind the instant litigation, McGrath is entitled to discovery that is relevant to the claims it has raised in the complaint in this case, even if the bounds of discovery were different in the Superior Court case in which the parties asserted different claims arising from a different set of facts. See FED. R. CIV. P. 26(b).

Accordingly, PCM cannot invoke the doctrine of res judicata to prevent McGrath from bringing the instant action before this Court or obtaining discovery relevant to its claims.

## VI.      Conclusion

For the foregoing reasons, PCM's motion to dismiss is DENIED and McGrath's motion to

strike exhibits attached to the motion to dismiss is DENIED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge